which begins with the tantalizing dated order of September 17, 2003. I was in school with a guy whose name was spelled exactly like this and we called him Jack Mijares and he called himself that too but I guess when I heard what I'm sure is the correct pronunciation I thought my goodness Jack you didn't even know your name. It's Mijares, it's pronounced as as I guess the judge is right. I had when I saw it and when I heard him say it I went back to look and I'm telling you my classmate was Jack Mijares the same spelling for and he's dead now so I can't tell him he spelled his name wrong for I mean pronounced his name wrong for all these years. Is it Mijares? I'm sure it is but soon as he said it I knew he was right and I thought my goodness Jack was calling himself the wrong name. I don't know how that happened. I knew you when you said it. I knew you were right. It just it caught me by surprise. That has nothing to do with your time so let me stop and let you go but it just shocked me. I thought what I'm looking back again yes same way Jack spelled his name. Okay all right well enough humor for the day. Thank you your honors for permitting us to present the case to you an oral argument and what I what I'd like to ask the court to do for us is just for a moment to consider the following scenario and that is in March of 1996 an immigration judge sitting here in San Francisco made a decision on an application for political asylum that was filed by the petitioner. It took the immigration service and I'll refer just it's now it's called the Executive Office of Immigration Review and there's been another name change as we all know Department of Homeland Security but for the sake of the arguments today the immigration service took them about five years to make a decision five pages long. That decision denied the affirmed I should say the denial of the asylum application that was filed. What happens next the court knows because we have the record of proceeding here. We have a motion filed and that motion attempts to bring before the court an application for adjustment of status. In immigration you have to get in line unless you're an immediate relative you have to get in line to be able to get a visa number and in some instances those visa number lines take years and years and years and years and what we know from this record of proceeding is that the United States citizen father of the petitioner filed the visa petition for him but that visa number continues and back then in 2001 was still at least 14, 15, 16 years away that's what we know. So that when that motion was presented it wasn't ripe. The application for adjustment of status there is absolutely no way a visa would be available to the petitioner that he would be able to get back in front of an immigration judge and simply say I have a number available and I want to apply for adjustment of status. Today the focal point for us in our petition is is there equitable tolling? There's been one motion filed, two motions, three motions and the board of immigration appeals as you know today with the latest submission denied the last motion in September and simply stated you've all you're out of time and certainly there's been more than one motion filed. Is there equitable tolling? Well I know we all know that this court has laid to rest the issue of equitable tolling. There is equitable tolling depending on what those circumstances are. Do we have those circumstances in this case here? We believe we do and why? Because today as we look back on this case this petitioner has been now in the United States for 14 years. You know the problems from for one-third of the court. Delay works into the advantage of people who have overstayed 99 out of 100 times. They're delighted with the delay. So let's assume we would do what I think you're asking us to do is to say all right if you delay you may find we're going to say that there was equitable tolling. Quite often the delay is induced by the other side and and certainly the other side is comfortable with the delay not unhappy about it because it keeps the matter from coming to a head and and the head might be you've got to leave the country. So do you see what you're asking us to do? You're asking us to say that something that of the person who is wrongly remaining who may be wrongly remaining who certainly is not remaining based on any permit to stay is going to work to the disadvantage of the persons who let him remain. Don't you think that kind of creates a little problem? I think you're absolutely right your honor. I think it does in some circumstances I I would I've grappled with that issue as we from the moment that we undertook representation but I think we're we collectively handling immigration cases large volume of these cases it would be somewhat disingenuous for us to simply place the if you will the burden on the alien that he is the one that's the delay I think the court would take I'm not saying he's the one that caused it but he's the one that's comfortable with it because if you want to if you want to try to move it along we'll see something in the file you may not succeed but we'll see something in the file that shows that the alien did everything he could to bring this matter to to fruition. There are at least three points that I see immediately had they been taken care of in a the delay hurt the petitioner it it disenfranchised him and how that occurs is as follows before we've had two major changes in the immigration law April 24th 1996 the ADEPA April 1st 1997 and we know that Mr. Mejares enters the country in 1989 before the change before the effective date of IRA on April 1st 1997 he has the seven years there is no benefit to him by delaying and as we all know now the court has been inundated with immigration cases because headquarters has decided to move all of these cases that were before the board of immigration appeals in 180 days and the people have nowhere to go so we're here but as far as Mr. Mejares to respond to the court did the delay help him first on the first go around absolutely not number two I'm not suggesting that it helped him here I'm suggesting I'm questioning the the a rule that would say uh a delay works against the department as opposed to when we know that in many instances it favors uh the person wants it lawyers sometimes file just to get it to get the delay I would agree with the court except in this instance the department has done a number of things that militate against that position what they've done is they've done the following and the court would take I imagine would take don't waste your time on this argument we'll have to decide it I was just you're talking about equitable tolling and that's that's why I raise a question but go ahead but what do you plan to tell us but in connection with the equitable tolling the department has even taken these cases now where the stop time rule would take effect and this case would have been impacted by the stop time rule because we had his entries in 89 by 1994 the order to show cause the charging document is issued and by the effective date April 1st 1997 he's out notwithstanding there's been some interpretation after that date and what the department has done with those cases is they've come forward and they've said all right folks let's hold off we're not going to deport these folks that are affected by the stop time rule if they would otherwise be eligible to apply under the 10-year statute so they've promulgated the rules that have now said come on we're going to regularize your status we know you've been here a long time we know there's been a lot of delay that we know that sometimes one day it's it's crisis management one day we're going this way the next day we're going this way we have narcotic handling other issues and here in this instance there's absolutely no prejudice in putting this case in a position where the department can adequately deal with the factual question that let's let's translate what you just said into legal terminology putting this case into a position exactly what are you asking us to do to allow to order to remand so that the case would be reopened under the rules of the department rules they would administratively close the case and then proceed to re-paper the case that's what they would do the deportation would stop by their own rules if the board is the case is remanded to the board of immigration appeals it's reopened the the department then would close the case they would issue they would then even though the re-papering rules are not in places of yet they would then hold the case in abeyance and they have hundreds of these cases in that same posture we have a motion to reopen that was denied and now we have a motion to reconsider the motion to reopen which was denied and you're asking for yet another shot for us to order the case reopened we we are under these circumstances because these circumstances here have have this is our time now before this court to to lay out what we have and what would our ground be that somehow even though there have been two two looks at this that we should order reopening because of equitable tolling you have you you have a number of cases here in the circuit that address individuals who've uh that they've relied on individuals that have gotten mis bad advice from their lawyers uh individuals who've been told i have an application on file and i didn't and they when in fact they didn't have it on file and this court has proceeded to allow for equitable tolling to allow you want us to hold that this is a permissible multiple motion to reopen yes because of equitable tolling because of ineffective representation by counsel absolutely correct sir why don't we hear the other side thank you and we'll give you an opportunity to respond thank you your honors i may have pleased the court my name is jeffrey bernstein and i represent the attorney general um i would like to get to the issues of this case um and a key question uh in determining whether the board abused its discretion in denying mr mihari's second motion is what evidence in the record would have required the board to conclude that the petitioner's attorneys failed to render effective representation and or whether any of their actions prejudiced his opportunity to obtain suspension of deportation between october 27th 1996 when he became when he obtained seven years and march 31st 1997 when according to this court's precedent the stop rule was triggered suspension of deportation is discretionary and requires a showing of among many other things extreme hardship to the alien and or a qualifying relative at the time of his hearing in march of 1996 um mr mihari's had only one qualifying relative um in the united states a two-year-old child mr mihari's parents had not yet come to the united states and his second child had not yet been born um there is no evidence in the record mr mihari says has provided the board and provided the board with no evidence indicating when his parents arrived in the united states um in this circumstance uh with this bare evidence mr mihari's could not establish a prima facie case of extreme hardship the case law of the board in this court establishes that without more an alien couple with a young child with a young u.s citizen child who could clearly return with his parents to the philippines and to rejoin the mihari's other two children and the mihari's family in the philippines including apparently their parents cannot establish extreme hardship again mr mihari's proffered no evidence showing either that his u.s citizen father had arrived in the united states before april 1st 1997 how do you see the allegations of ineffective assistance of counsel your honor how do you see the allegations of ineffective assistance of counsel well i'm getting to that your honor um good that was actually my next sentence um no evidence showing that his father had arrived before april 1st 1997 or that his attorney uh before the board mr kaufman who had been retained according to mr mihari's uh declaration which is in the record solely to represent him with respect to his asylum application that was their agreement that mr mihari uh that mr mr kaufman would represent mr mihari's in the prosecution of his asylum application and any appeal thereof uh no indication uh that there was any agreement with respect to any other um application for relief from removal um and there's no evidence that mr kaufman who again had been retained solely to represent him with respect to the asylum application was made aware of any facts which would establish a prima facie case of extreme hardship thus there's no evidence to show either that the attorney uh hired to prosecute the asylum application was in any way negligent in not arranging to prosecute uh an application for or that mr mihari's and more importantly i think that mr mihari's could establish a prima facie case of extreme hardship during that period so as to cause him prejudice even assuming that his attorney had been negligent which he has not established per force there is no evidence to establish that attorney lopez was negligent in failing to conclude that attorney kaufman had been negligent and that if he had been uh such would have prejudiced mr mihari's um mr uh contrary to the um uh seeming assertion in the petitioner's brief um mr mihari's when mr uh lopez um represented mr mihari's in the year 2000 he could not have uh applied for suspension of deportation for him because his eligibility for suspension of deportation had uh three years before that uh been uh had expired thus the bia uh proper and he and mr mihari's was ineligible because of the expiration thus the bia properly concluded that mr mihari's failed to establish either that he was the victim of ineffective assistance of counsel or assuming that he had been uh that he was prejudiced thereby you're making an interesting distinction that frankly i'm just not that familiar with you seem to draw a very bright line between the asylum process and the application for spent suspension of deportation is it proper to draw that bright line and say that mr kaufman was only retained for one when it seems to me that they're trying to reopen the proceeding that mr kaufman was retained to to handle for the purpose of making this application i know it's you see what i mean i mean i'm not sure i do you're not well why has you say kaufman was only retained to handle the asylum i don't make that assertion um uh i make that assertion only to show that mr um kaufman was retained only for the asylum application and there's no evidence that mr uh kaufman was asked to file a suspension uh application um uh but doesn't that automatically flow from this type of a process when your asylum claim is denied by the bia is it understood that no your honor no absolutely not your honor in proceedings in deportation proceedings the normal route is to apply for any um relief discretionary relief that one is eligible for um so mr kaufman should have applied for that should apply for what any relief that he's entitled to such a suspension of deportation no because i mean if he if if there was evidence that mr maharis was eligible for suspension of deportation um and apparently the parties uh the attorney and the client didn't believe so because mr mahari mr kaufman was retained for purposes only of the asylum application but yeah if mr maharis had been eligible um it would have been reasonable to assume that they would have agreed that they're all included in the same process the way i've been looking at him for 15 years well it's not because you don't you don't apply for relief you're not eligible for mr maharis wasn't eligible for suspension number one because i thought you were telling me the reason he didn't apply for relief but doesn't make any difference because he wasn't retained for that he was retained only for asylum that would be you're trying to split something i didn't your honor i i apologize i wasn't trying to make that point um i was i'm just pointing out that he that obviously the discussions between mr mahari's and his attorney um where were such that asylum seemed to be the only way to go and it was because he didn't have seven years for suspension of deportation and as i've explained he didn't seem to have the ability to establish extreme hardship um given that um there was no negligence in not following suspension i mean obviously you can't expect an attorney um who's taken an oath to uh to to uh you know represent matters properly before courts to file an application for suspension of deportation where the seven years hadn't uh we haven't had the he didn't have the seven years necessary and where there's no indication that there's extreme hardship both of which are requirements and again when he had the seven years in october of 1997 and between that and when he lost it in 19 or i'm sorry october of 1996 and april of 1997 the petitioner had proffered no evidence to the to the board that he was eligible for suspension of deportation that he had any prospect of establishing extreme hardship because as i say the the law before in the board and in this court is that if uh you've got two aliens with a u.s with one young u.s citizen child um it's very difficult to establish extreme hardship um just on those basis alone because the the sending back a young child to the philippines is as this court and the board have um observed simply um concomitant usual hardship um attendant to deportation not uh exceptional hardship um which is excuse me extreme hardship which is required to establish suspension of deportation mr. wahad will suggest that his clients are caught in a time warp and if we order this matter be reopened that it will be administratively closed and repapered i i i don't understand where he uh he he gets that um that that he i mean he's apparently asking for something that he's never argued um well i'm just asking is that what will happen no your honor um why not uh because he's not eligible for suspension of deportation he doesn't have seven years the stop time rule cut him off he can't establish he was he came to the country in 1986 as i recall or in 1989 as i recall um he was put into proceedings in 1994 before seven years had elapsed the stop time rule cuts him off he can't he doesn't have seven years he can't he can't uh he's not eligible for suspension of deportation moreover even assuming for the sake of argument mr kaufman believed he could muster an extreme hardship argument as we explain in our brief it would have been reasonable to assume that the stop time rule enacted before october 29th 1996 would have precluded eligibility um given the uh the state of the law at that time the the the board when he had acquired seven years the board had ruled uh that the stop time rule was retroactive um this court in ostrero uh didn't until uh really only 35 days finally until 35 days uh remained before an application for suspension of deportation could be filed um established that uh the stop time rule was not retroactive so it was eminently reasonable and certainly not negligent for an attorney to believe that even if a an application for uh suspension of deportation had been filed 35 days before eligibility would have been cut off or even three months before eligibility had been cut off that the administer that the the application would not have been able to be administratively processed before april 1st 1997 when as a matter of law and this court's precedent um eligibility would have been cut off um so there's there's absolutely no evidence that there's any negligence or ineffective assistance of counsel i know you don't agree with this point but do you understand what he's saying when he talks about uh equitable tolling he's not talking about any time it's all right but the delay put him on the other side of a rule change that's what well that's right that's right and he thinks that if there hadn't been the delay he would have been on the right side because he could have acted before the rules well that's true there are there certainly well that's true your honor i think and it may have something to do with this case you you started your argument by saying you were going to get to the arguments that have to do with this case which suggested that everything that has been said prior to the time you took the stand had nothing to do with the case well we kind of decide what has to do with the case oh your honor i i apologize i didn't mean to to give the court that impression i certainly didn't mean to say that i i do want to say as we say in our as we as we we relate in our brief the court has held equitable tolling before but only in cases of fraud essentially where um i suspect he knows his long shot but at least he had a basis for his argument and we we ought to examine it well i we might disagree as to how strong the basis is your honor um but um you know i certainly don't think this is a frivolous appeal and thank you counsel thank you your honor thank you your honor uh i'd like to clarify a point uh mr bernstein has indicated to the court as to what his belief is is to the standard for suspension of deportation i'd like a clarification just very quickly section 244a1 indicates that the hardship may be to oneself you do not need qualifying relatives qualifying relatives united states citizen children united states citizen uh is something that now comes after april 1st 1997 prior to april 1st 1997 the law is you can be here without anyone you can be here by yourself and you can qualify for suspension deportation point one secondly your honor the you pose the question what would happen to this case if the matter would be reopened absolutely this case would be administratively closed and notwithstanding that um mr bernstein indicates that uh this would be a case where the stop time rule would apply it is exactly these types of cases that the department has addressed the repapering provision and the policy that they're carrying out now and that is give me someone that is barred on suspension who's not eligible for suspension because of the stop time rule we're going to and we will now look at him based on the 10 years that he's been here and i believe mr bernstein would agree with me today that they do have the 10 years uninterrupted physical presence in the united states and if the charging document which is now not in order to show cause but a notice to appear is filed today with the executive office of immigration review that document will indicate that they have been here 10 years prior to the issuance of the charging document so it is exactly for that reason that you push them over onto the other side so that a new choice as if we file a new complaint and we begin anew what are the consequences if you lose this case they will be removed ordered removed from the united states who is they both husband and wife and both united states citizen children let me correct that the the parents would take their children with with them the immigration service is not a position obviously to deport united states citizen children but the constant the net result is that they would has two children in the philippines doesn't he uh he does he has a six citizens he has two children that are in the philippines now two children that are here and two that are citizens the two that are citizens here one that's six and i believe in the philippines i that's not my that's citizens of the philippines of united states no i don't know that those children were born in the united states in the brief i believe i'll have to double check that okay thank you thank you counsel case just argued is ordered submitted and this court is adjourned for this session
judges: Farris, Trott, Weiner